KIRKHAM, MICHAEL & ASSOCIATES, INC., a corporation, Continental Casualty Company, a corporation, Plaintiffs,

and

The City of Rapid City, South Dakota, Involuntary Plaintiff,

v.

The TRAVELERS INDEMNITY COMPANY, a corporation, and Maryland Casualty Company, a corporation, Defendants.

Civ. No. 70–27S.

United States District Court,
D. South Dakota,
Southern Division.
July 20, 1973.

Ronald W. Banks, of Costello, Porter, Hill, Banks & Nelson, Rapid City, S. D., and William G. Campbell, of Kutak, Rock, Campbell & Peters, Omaha, Neb., for plaintiffs.

Horace R. Jackson, of Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, S. D., for involuntary plaintiff.

F. M. Smith, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for defendant The Travelers Indemnity Co.

Sam W. Masten, Canton, S. D., for defendant Maryland Casualty Co.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This declaratory judgment action arises from the defendants', The Travelers Indemnity Company (Travelers) and Maryland Casualty Company (Maryland), refusal to defend the architectural and engineering firm of Kirkham, Michaels & Associates (KMA) in a suit filed in August, 1969, in the Circuit Court, Seventh Judicial Circuit, Pennington County, South Dakota, and

styled The City of Rapid City, South Dakota v. Kirkham, Michaels & Associates et al. (hereinafter the "principal action"). This court's jurisdiction is premised upon the parties' diversity of citizenship, the matter in controversy exceeding the sum of $10,000. 28 U.S.C.A. Sec. 1332. Subsequent to the filing of the complaint in this declaratory judgment action, and prior to a hearing on the merits, this court, based upon the original parties' stipulation, ordered the realignment of the Maryland Casualty Company to show it as a party defendant and made the City of Rapid City, South Dakota, an involuntary plaintiff in the immediate action.

By contract, entered into on May 20, 1963, KMA agreed with the City of Rapid City, South Dakota, to furnish their services in respect to the construction of a waste treatment facility for that city. Those services included plans, specifications, construction observations and inspection during the life of the project. Said plans and specifications were drawn and submitted for construction. Commencing with the project's inception, on November 25, 1965, KMA provided a resident inspector. On January 1, 1968, the project was, apparently, deemed completed and the facility was tendered to the city for possession and operation. However, according to the complaint in the principal action, the city has never accepted the plant as the fulfillment of KMA's contractual obligations. The City of Rapid City complains that due to KMA's negligence the facility is deficient and that the city has been required to expend additional sums for the correction of the sewage plant's inadequacies.

The immediate dispute centers around the covenants to defend contained in the one Maryland policy and the three Travelers policies issued to KMA. For purposes of clarity and ease of reference the material portions of those policies are hereafter set forth.

Maryland's Comprehensive Automobile and General Liability policy was effective from January 17, 1965, to January 17, 1966, and provided:

To pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract designated in the schedule below, shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

The policy also provided for the defense of such suits which may be initiated against the insured and embraced within the policy's coverage. But the policy contained the following exclusion:

ENGINEERS, ARCHITECTS OR SURVEYORS—EXCLUSION OF PROFESSIONAL LIABILITY

It is agreed that the policy does not apply to injury, sickness, disease, death or destruction arising out of defects in maps, plans, designs or specifications, prepared, acquired or used by the insured.

The policy also contained an endorsement excluding products hazards.

In 1966 KMA sought coverage from defendant Travelers. Travelers issued KMA three consecutive annual policies commencing January 17, 1966, and terminating on January 17, 1969. The initial policy covering January 17, 1966, to January 17, 1967, provides:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and set-

tlement of any claim or suit as it deems expedient;

With respect to policy period each policy provided:

This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

The first Travelers policy contained an exclusion similar to the Maryland policy's relating to Engineers and Architects.

The Travelers policies for the period January 17, 1967, to January 17, 1968, and January 17, 1968, to January 17, 1969, contained the following language.

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

Coverage A.   *bodily injury* or
Coverage B.   *property damage*

to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limits of the company's liability has been exhausted by payment of judgments or settlements.

"Occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured;*

### EXCLUSION

(Engineers, Architects or Surveyors Professional Liability) It is agreed that the insurance does not apply to *bodily injury* or *property damage* arising out of any professional services performed by or for the *named insured,* including

(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

(2) supervisory, inspection or engineering services.

In addition to these comprehensive liability policies, KMA purchased an Architects' and/or Engineers' Professional Liability Policy from Continental Casualty Company. At present, there is no dispute as to its provisions.

It is the defendants' position that their respective policies do not afford the coverage KMA attributes to them. The defendants maintain that it is clear from their policies' language that there was never an intention to provide KMA with professional liability coverage; that coverage for such separate and distinct exposure can be procured by those desiring it. They concede that an "accident", as that term is used in their policies, occurred. Under their analysis "(t)he sole question is when it (the accident) occurred and whether any coverage was afforded KMA by these defendants at that time."

Relying upon the general rule annotated at 57 A.L.R.2d 1385 (1958), "that an accident which, as to its nature, represents a risk covered by a policy of liability insurance is not covered if it occurs either before or after the period of coverage under the policy," the defendant insurers reason that since the sewage treatment plant was not taken over by the City until January 1, 1968, there could not have been damage in the form of loss until after that date. Since there was no damage until after that date, there was not an "accident" until after that date. Therefore, the accident occurred during the effective period of the second and/or third Travelers policies which specifically excluded coverage for all professional liability, including inspection services. They advocate that

(t)here is no theory under which the City of Rapid City could be damaged until after it took over the plant which was after January 1, 1968. That the alleged negligent acts occurred prior to that time is not in question. It is simply a fact that no damage occurred until after the City took over the plant and no accident within the meaning of the policy occurred until damage arose.

Thus, there being no coverage, there is no duty on the part of the defendant insurer to defend in the principal action.

The plaintiff, KMA, contends that the defendants are ignoring the basic theory of the City's complaint in the principal action. KMA argues that the complaint alleges a continuous course of negligent conduct as a result of which the court should hold that the accident or injury occurred within the applicable policy periods.

It is clearly inferable from the complaint in the Principal Action that the plaintiff therein suffered damage during the Policy period. The complaint alleges a continuing course of negligent conduct extending from the time KMA was awarded the contract up to the date of filing the Principal Action.

An additional ground for coverage, KMA claims, is that afforded by the "products hazard" provision of the defendants' policies. Citing several foreign state court decisions, KMA asserts that such coverage is not eliminated where damages occur as a proximate result of negligent performance of services where the damage occurs after the policy period.

It is stated "that the obligation to defend is determined by the nature of the claim against the insured, regardless of whether it is meritorious." R. Keeton, Insurance Law—Basic Text 462 (1971). This supports the general rule that "the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint or petition in such action, even if they are groundless or false." 44 Am. Jur.2d Insurance Sec. 1539 (1969); see generally Annot., 50 A.L.R.2d 458 (1956). Aware of these instructions, I now turn to the City of Rapid City, South Dakota's, complaint in the principal action to determine the defendants' duties to defend KMA in the state court action.

The complaint in the principal action, insofar as it applies to KMA, is in three counts alleging negligence, breach of contract, and breach of implied warranty. The first count, charging negligence, provides the substance for an analysis of the coverage issue now before this court. Count I states:

1. Kirkham was at times material and still is a corporation engaged in the practice of the profession of engineering at Rapid City.

2. By contract, entered into May 20, 1963, (Ex. A, is attached as a copy and made part hereof), Kirkham agreed with Plaintiff for a valuable consideration to design, prepare detailed plans and specifications for, conduct bidding, detailedly to oversee and inspect construction, and to make a final inspection of, Waste Treatment Facilities for Plaintiff, to the end there should be provided for Plaintiff a serviceable and efficient sewage treatment system (Plant) complete and placed in successful operation for Plaintiff, as so designed and constructed.

3. Kirkham did in form and purportedly do the things by it to be performed as stated above and the Plant was purportedly constructed in accord with the design, plans and specifications of Kirkham, and under Kirkham's direct, immediate supervision.

4. Kirkham owed Plaintiff the duty to possess and provide engineering competence common to the profession in carrying out its tasks above stated, including but not limited to skill in (a) design, preparation of plans and

specifications, (b) knowledge of materials, construction methods and procedures and the proper application of such materials, methods and procedure, (c) supervision and inspection of the materials and work, to produce the Plant intended, and further owed the duty to exercise reasonable and ordinary care in utilizing and applying such competence, skill, knowledge and supervision to produce the Plant intended.

5. Kirkham was negligent in possessing, providing and applying professional competence to the intended work, negligent in the performance of its professional duties, failed to use reasonable and ordinary care in the work so contracted to be done.

6. As the direct and proximate result of Kirkham's negligence, the Plant is not serviceable and efficient, neither is it complete nor in successful operation, and it is structurally deficient, defective and inadequate for its intended use and purpose in, including but not limited to, the following particulars: (There follows a list of several mechanical systems and their individual defects.)

7. By reason of the deficiencies stated the plant does not and has not handled sewage efficiently, does not process solids, does not produce usable gas for fuel, requires extra personnel and cost of personnel, expense and work, requires excessive amounts of chemical, requires the use of open land for sludge storage, will require substantial sums for correction of the deficiencies and for the extra cost of operation and handling sewage pending the completion of such corrections, creates an unpleasant and odiferous situation, the elimination of which was an objective of Plaintiff, all to the damage of Plaintiff in the sum of Two Hundred Fifty Thousand Dollars ($250,000) which the Plaintiff claims, with interest as provided by law, from January 1, 1968.

The clear import of the complaint is that KMA was negligent in its performance of the contract. The complaint charges that KMA was negligent throughout its course of conduct in creating the Rapid City Waste Treatment Facility. The complaint fails to allege at what point in time the City was damaged, but, in paragraph seven, expresses a dissatisfaction with the tendered plant, all to the damage of the City.

Thus, from an analysis of the complaint it was not until the Waste Treatment Facility was tendered to the City that the accident or injury arose. Prior to the facility being turned over to the City for possession and operation the City never sustained any *actual* damages.

> (T)he time of the occurence of an accident within the meaning of an indemnity policy is not the time when the wrongful act was committed, but the time when the complaining party was actually damaged.

43 Am.Jur.2d Insurance Sec. 340 (1969). It was upon tender, then, and only then, under the disputed policies' provisions covering damages from "accidents", that the insurers' contracts could have provided protection. While KMA's conduct may have constituted a continuous course of wrongful acts or negligence, there was not a continuous course of "accidents" as KMA suggests. It is the damage incurred by "accident" that triggers the policies' coverage, not the preceding wrongful acts. A thorough reading of the complaint discloses that the City sustained actual damages or injury by accident when the alleged defective facility was turned over for possession and operation. Counsel for KMA does not explain how they suffered an "accident" or "injury" prior to this time.

The policy in effect at the time the plant was turned over to the City was the Travelers policy covering January 17, 1967, to January 17, 1968. That policy embodies an Architectural-Engineer exclusion of sufficient breadth to

exempt the defendants from the exposure KMA seeks to burden them with. Absent coverage there is no duty to defend under these policy provisions. Black Hills Kennel Club v. Fireman's Fund Indemnity Co., 77 S.D. 503, 94 N. W.2d 90 (1959).

KMA also claims that the products hazard provisions of the policies in question provide coverage. It is KMA's reading of Nielson v. Travelers Indemnity Company, 174 F.Supp. 648, aff'd. 277 F.2d 455 (8th Cir. 1960), and several foreign state court decisions,

> that when damage occurs after the end of the term of an insurance policy having a "completed operations" or "products hazard" provision (as does the Policy in issue) the insurer will not be allowed to interpose this exclusion as a defense where the insurer is engaged in providing services as opposed to manufacturing a product.

The Nielson case is not authority for KMA's contention. In Nielson the court was dealing with a contractor who negligently damaged a gas line which sometime later exploded injuring a third party. Because of the ambiguity in the coverage the court resolved the question of coverage in favor of the insured.

KMA is neither a contractor nor is there any ambiguity in the policies' provision. The contract between the City of Rapid City and KMA is for services, not a product in the form of a Waste Treatment Facility. Architect-engineers do not deal in "products" as that term is generally used in the products hazard provisions of comprehensive liability policies. If there was such a product it would be KMA's services, not the facility. KMA's products hazard theory is inapplicable under our circumstances and, similarly, does not impose the duty to defend on Maryland or Travelers as KMA urges.

It is the order of the Court that judgment be rendered for the defendants.

This memorandum decision will constitute the findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.