[No. F012584. Fifth Dist. June 22, 1990.]

GARRIOTT CROP DUSTING COMPANY et al., Petitioners, v. THE SUPERIOR COURT OF KERN COUNTY, Respondent; SOUTHERN INSURANCE COMPANY et al., Real Parties in Interest.

**[Opinion certified for partial publication.†]**

† Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

## COUNSEL

Young, Wooldridge, Paulden, Self, Farr & Griffin, Larry R. Cox and Manning W. Puette for Petitioners.

No appearance for Respondent.

Sedgwick, Detert, Moran & Arnold, Michael R. Velladao, Arthur J. Saalfield, City Attorney, and Don McGillivray, Assistant City Attorney, for Real Parties in Interest.

## OPINION

**THAXTER, J.**—Petitioners Garriott Crop Dusting Company, J. C. Garriott and Richard Garriott (collectively Garriott) seek a writ of mandate directing respondent Superior Court of Kern County to vacate its order granting summary judgment to real party in interest United States Aviation Underwriters, Inc. (USAU), in a declaratory relief action.

The central issue before us involves the construction of liability insurance policies issued by USAU to Garriott, covering the period between June 10, 1967, and June 10, 1970. It appears to be undisputed that Garriott's operations on land occupied by them from 1969 through the present time resulted in toxic contamination of adjacent properties. The City of Bakersfield (the City) purchased property adjacent to Garriott's operations in 1985, subsequently discovered the contamination on its property, and sued Garriott for damages and injunctive relief. The issue is whether USAU's "occurrence"-triggered liability policies provide indemnification or defense coverage for Garriott for damages claimed by the City when the City did not acquire the contaminated property until 15 years after the final USAU policy period terminated. Respondent court found no obligation under the policies and granted USAU's motion for summary judgment in the declaratory relief action.

## FACTS AND PROCEDURAL HISTORY

Garriott began operations at 2010 South Union Avenue in Bakersfield (the Garriott property) in 1969. Garriott's "operations" consisted of the aerial application of agricultural chemicals on farmland, more commonly referred to as crop-dusting.

In 1969, Garriott dug an unlined earthen pit on its property, which it began using as a disposal site for water used to rinse its crop-dusting aircraft and the storage tanks they carried. In 1985, Garriott was informed by the Department of Health Services and the regional water quality control board (RWQCB) that the soil on the Garriott property was contaminated, and in either 1985 or 1986 Garriott learned that adjacent property was contaminated as well.

During the period from June 10, 1967, to June 10, 1970, Garriott was covered by successive policies of liability insurance written by USAU. The coverage clause of each USAU policy reads as follows: "The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

There is some dispute in this court as to how the policies defined "occurrence," a matter that will be dealt with *post*.

On July 19, 1985, the City acquired a parcel of land at 2000 South Union Avenue in Bakersfield (the adjacent property). At some point thereafter the City became aware that surface and subsurface soil on the adjacent property had been contaminated by acts or omissions of Garriott. The City notified Garriott of its discovery and filed suit against Garriott for damages and injunctive relief. The suit was in three causes of action: maintenance of a nuisance, trespass to land, and negligence.

Southern Insurance Company, the carrier affording liability coverage to Garriott at the time the City both notified Garriott and filed suit, agreed to defend Garriott under a reservation of rights. Thereafter, Southern Insurance filed a declaratory relief action against Garriott, the City, the state Department of Health Services, the RWQCB, and approximately 20 other insurance carriers which Southern Insurance alleged had provided Garriott

with liability coverage during the relevant time period. The other carriers, including USAU, filed cross-complaints.

USAU filed a motion for summary judgment on the Southern Insurance complaint and on all cross-complaints, claiming that the USAU policies would provide neither indemnity nor defense for the City's claims as there was no "occurrence" under the terms of the policies. USAU made two arguments to support its claim. First, USAU contended that as a matter of law, the city had to sustain damage during the USAU policy periods for there to be a covered occurrence, and the City had not owned the adjacent property (and thus could not have suffered damage) until 1985, 15 years after the last USAU policy terminated. Second, USAU raised the statute of limitations on the City's causes of action for nuisance, trespass and negligence, contending that since the statute would be an absolute defense for anything Garriott did during the USAU policy periods, the City's claims must rest on more recent acts or omissions, and thus would not arise from any occurrence during the USAU policy periods.

In its opposition to the motion, Garriott argued that the City might be claiming damages for property damage sustained prior to the City's acquisition of the adjacent property, and that the adjacent property may have sustained damage during USAU's final two years of coverage. In addition, Garriott pointed out that USAU's arguments all centered on the meaning of "occurrence," a term which was undefined in the copies of the policies appended to the motion for summary judgment.

The RWQCB and the City also filed opposition to summary judgment.

USAU filed points and authorities in reply to those filed by Garriott, the RWQCB and the City. Attached to those papers was a declaration by Pasquale Vallone, a senior vice-president of USAU, stating it was the standard custom and practice at the time the USAU policies were issued for that type of policy to carry an endorsement defining "occurrence" as: "an event or a repeated exposure to conditions, which unexpectedly causes bodily injury, sickness or disease, including death at any time resulting therefrom, physical injury to or destruction of tangible property, including the loss of use of the property resulting directly from such physical injury or destruction, during the policy period. All such exposure to substantially the same general conditions shall be deemed one occurrence."

Although case law upholds the propriety of submitting new declarations supporting summary judgment with the moving party's reply papers (*Weiss v. Valenzuela* (1988) 204 Cal.App.3d 1094, 1097-1099 [251 Cal.Rptr. 727]), Garriott filed a written objection to consideration of the purported

endorsement, arguing that the filing of additional supporting papers with the moving party's reply is not specifically authorized by Code of Civil Procedure section 437c.

The summary judgment motion was granted by a minute order stating as the basis for the ruling that "The City of Bakersfield sustained no injury during the period of coverage of the USAU policies." Respondent court did not rule on Garriott's objection, and the record does not reveal whether the court considered the definition of "occurrence" in ruling.

Garriott moved the court for reconsideration or clarification of its ruling. At a hearing on that motion the judge stated: "Now the motion for reconsideration is denied. The motion for clarification is denied, except that the Court will observe that *the sole basis that the Court saw for the decision was as is indicated in the moving papers the City of Bakersfield could not have been damaged during the USAU policy periods because it did not purchase the [adjacent] property until July, 1985.* That was the basis of the Court's ruling. So you have a clear record for your further action." (Italics added.)

Garriott petitioned this court for a writ of mandate to vacate the order granting summary judgment. We issued an order to show cause why the order should not be vacated. USAU filed a return in which it both answered and demurred. Garriott filed a reply together with a "motion to further supplement exhibits in support of petition." The proffered exhibits purported to be copies of two of the original policies of insurance issued to Garriott by USAU, those issued to cover from June 10, 1968, to June 10, 1970. In an attached declaration, J. C. Garriott stated he had found Garriott's insurance records for the late 1960's and early 1970's on or about March 6, 1990, and he had been unable to locate these records prior to that time. The offered copies of the policies each define "occurrence" as: "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured . . . ."

DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 783.

III. *Summary Judgment Was Erroneously Granted by Respondent Court*

"A motion for summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. [Citation.] **(1)** Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.]

"Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

 Respondent court expressly stated that the "sole basis" for its ruling was its conclusion that the City could not have been damaged during USAU's policy periods as it did not acquire the adjacent property until 1985. USAU maintains that respondent court was correct in finding no triable issue of material fact as to when the City first sustained injury; the City itself could not have been injured before it actually acquired the adjacent property.

The question we must address is whether this assertedly undisputed fact is determinative, as respondent court believed it was. Was it material, in determining USAU's coverage obligations on its 1967-1970 policies, that the City itself did not sustain injury until 1985?

A. *Relevant Policy Language*

 The proper initial focus for a court in resolving a question of insurance coverage is on the language of the insurance policy itself, rather than on judicially created "general" rules that are not necessarily responsive to the policy language or facts of the dispute. (*Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1034-1035 [211 Cal.Rptr. 902].)

The policies, as presented to respondent court, promise indemnity for "all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, *caused by an occurrence* and arising out of the ownership, maintenance or use of the insured premises . . . ." (Italics added.) The policies also stated that USAU "shall have the right and duty to defend any suit against the Insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

The policies define "occurrence" in pertinent part as "an event or a repeated exposure to conditions, which unexpectedly causes . . . physical injury to or destruction of tangible property . . . during the policy period." "Property damage," clearly a key term in the coverage provisions, was not expressly defined in the materials presented to respondent court; however, the phrase "physical injury to or destruction of tangible property . . . during the policy period," which appears in the definition of occurrence, suggests what USAU might have contemplated when it used the term "property damage."

■ So, under the terms of the insurance policies as USAU presented them to respondent court, the event triggering coverage is one that causes "physical injury to or destruction of tangible property" during the policy period. Nowhere do the policies say to whom that property must belong, save that it must not belong to the insured. In other words, the policies themselves do not expressly require that the eventual claimant own the property at the time the property is damaged for coverage to ensue; they merely require that the damage, the "physical injury to . . . tangible property," take place during the policy period.

The question raised by the policy language is not when the City was damaged; it is, instead, when the property now owned by the City was damaged. USAU has not shown that the damage for which recovery is sought did not occur while the USAU policies were in force. ■ On summary judgment the moving party has the burden of affirmatively disproving the other party's cause of action or defense. (*Mason* v. *Superior Court* (1985) 163 Cal.App.3d 989, 996 [210 Cal.Rptr. 63].) ■ If USAU had submitted a declaration from the City expressly disclaiming any damages for the period of USAU's coverage, the burden may have been met. On the contrary, however, the City's responses to interrogatories expressly referred to "a continuous pattern of contamination" commencing on an unknown date and contended that "a significant portion of the pollution was allowed to migrate onto the [City's] property by Garriott prior to the purchase date." Other evidence showed that Garriott's operations began in 1969 when USAU's policies were in effect. USAU did not disprove the

possibility that the City's claim was for damages arising during the policy periods. Thus, there is a triable issue of fact at least affecting USAU's duty to defend Garriott in the City's action.

■ The duty to defend under a liability insurance policy is independent of and broader than the duty to indemnify. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 274 [54 Cal.Rptr. 104, 419 P.2d 168]; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276].) Under USAU's policies, the duty to defend exists even as to allegations that are "groundless, false or fraudulent." ■ Here the City is seeking relief from Garriott for property damage which may have occurred during the policy periods, notwithstanding the City's nonownership at that time. If USAU can establish that the City cannot recover for damage occurring before its ownership, USAU should do so on Garriott's behalf in the City's action, not to Garriott's detriment in this action.

Based on our analysis of the policy language, the order granting summary judgment was founded on an immaterial issue, and the motion should have been denied. USAU nonetheless contends that respondent court was correct in concluding that coverage is barred by the City's nonownership of the adjacent property during the three years of USAU policies. The basis for this contention is not the language of the policies, but USAU's interpretation of judicially declared law from California and elsewhere.

B. *Case Law*

In *Remmer* v. *Glens Falls Indemnity Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379], the court was asked to interpret a liability policy with a definition of "occurrence" substantially similar to that presented by USAU in support of its motion for summary judgment. The Remmers and the claimants owned adjacent lots. During the Glens Falls policy period, the Remmers graded and filled a portion of their lot; some years later, a substantial amount of the fill dirt slid onto claimants' land. Claimants successfully sued the Remmers, not for the slide damage, but for maintenance of a present nuisance on the Remmers' property, i.e., the remaining fill dirt that " 'threatened and continues to threaten injury to [claimant]s' said property.' " (140 Cal.App.2d at p. 87.) After the nuisance suit was resolved in the claimants' favor, the Remmers sued Glens Falls to recover the tort award to the claimants and the Remmers' defense costs. The question presented in that suit: Was the Glens Falls "occurrence" policy triggered at the time the defective grading work was done, or did any "occurrence" take place after the policy period, at or around the time of the claimants' lawsuit?

In response to these facts, the *Remmer* court, relying on several cases from California and other jurisdictions, formulated the following definition of "occurrence": "The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but *the time when the complaining party was actually damaged.*" (140 Cal.App.2d at p. 88, italics added.)

Although the statement just quoted from *Remmer* seems to support USAU's position, that support dissolves on closer examination. *Remmer,* unlike this case, did not involve damage to property which changed hands between the date of damage and the date of claim. The *Remmer* court could refer to damage to "the complaining party" instead of damage to "the property" because the complaining party owned the property throughout all relevant time periods. Taking the *Remmer* opinion as a whole, the holding turns on when the property damage for which relief was sought occurred.

The *Remmer* court acknowledged the nuisance was in fact created during the Glens Falls policy term. The court observed, however, that "[t]he pleadings in [the underlying] action, . . . demonstrate that the damage, injury and cause of action there alleged were for the maintenance and continuance of a nuisance at the time the action was filed, [well after policy expiration]." (140 Cal.App.2d at pp. 88-89.) In other words, the only damage for which the claimants had sued the Remmers was outside the Glens Falls policy period. "Of course, the creation and maintenance of a nuisance is a continuing injury for which a new cause of action continuously arises. [Citations.] Here, in [the underlying case], the court found that the nuisance was a continuing one. But *to determine the question of the liability of respondent insurance company we must determine when the cause of action in the [underlying case] accrued.* It is because of the judgment against the Remmers in that case that this present action is brought. *We are not interested in ascertaining what theory the [claimants] could have sued upon, but on what theory they did sue upon.* This is to be determined from the pleadings. Clearly, *that complaint, without ambiguity, was for damages for the present nuisance, currently maintained and currently threatening injury, and for its abatement. The cause of action pleaded was necessarily, therefore, not for an 'occurrence' happening within the time limits of the policy. . . .*

"[I]t is not the happening of the wrongful act that is covered by the policy, but the damage flowing therefrom. To be covered by the policy the damage sued for must have occurred during the policy. The damage sued for in [the underlying case] did not so occur. Therefore, the policy does not cover the damage." (140 Cal.App.2d at pp. 89-90, italics added.)

As USAU points out, this court recently adopted the *Remmer* "general" rule for determining the time of an "occurrence" ("the time when the complaining party was actually damaged") in *State Farm Mutual Automobile Ins. Co.* v. *Longden* (1987) 197 Cal.App.3d 226, 231 [242 Cal.Rptr. 726]. The *Remmer* formulation has also been embraced by such noted experts as Appleman (7A Appleman, Insurance Law & Practice (1979 rev.) § 4501.03, p. 256) and Couch (11 Couch, Insurance (2d ed. 1982) § 44:8, p. 194). It can be found in American Jurisprudence Second (43 Am.Jur.2d (1982 rev.) Insurance, § 243, p. 324.) It has been accepted by the courts of many other states, and has been cited by federal courts interpreting the law of still other states. (See Annot., Event as Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies (1985) 37 A.L.R.4th 382, § 3 and cases cited therein.) Indeed, as stated by the Idaho Supreme Court, "This rule is followed in every jurisdiction that has considered the issue except Louisiana." (*Millers Mut. Fire Ins., etc.* v. *Ed Bailey, Inc.* (1982) 103 Idaho 377 [647 P.2d 1249, 1251].)

 In the midst of this rush to adopt the "general rule" of *Remmer,* it must be remembered that the rule is just that: a *general* rule. It is not universal; it is not without exception. (See, e.g., *Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412 [149 Cal.Rptr. 292, 583 P.2d 1335], refusing to apply the *Remmer* rule to policy language distinguishable from that in *Remmer*; see also *Harbor Ins. Co.* v. *Central National Ins. Co., supra,* 165 Cal.App.3d 1029, 1035, finding that a "general rule as to the timing of 'the occurrence' . . . may not be responsive to the particular question of a given policy's coverage.")

The *Remmer* rule is useful in distinguishing between a wrongful act (not an occurrence) and the injurious result of that act (occurrence). For instance, in *State Farm Mutual Automobile Ins. Co.* v. *Longden, supra,* 197 Cal.App.3d 226, the insured sold his truck to Longden and requested that State Farm change his coverage to another vehicle. Thereafter, Longden was injured in an accident caused by failure of the truck's brakes, and he sued the insured. The insured sought coverage on the theory that his allegedly negligent maintenance of the truck's brakes, during the period of coverage, was an "accident" as the term was employed in the policy. We relied on the *Remmer* rule to find no coverage; while the negligent act had taken place during the period of coverage, the "accident" (i.e., the time Longden was actually damaged) was later.

As useful as the *Remmer* rule is in the appropriate context, it has no application when the insured's act or omission and the damage flowing therefrom both occur during the policy period. Neither should the rule be applied where it would achieve a result contrary to the plain language of the

insurance policy or the reasonable expectations the insured has based on that language.

■ Here the insured, Garriott, purchased insurance from USAU to cover its liability arising from property damage during the policy periods. Garriott is now being sued for property damage (physical injury to tangible property) which may have commenced during one of the last two USAU policy periods—precisely what the policies say they cover. Use of the *Remmer* rule to impose a prerequisite to coverage not expressed in the policies (i.e., that the eventual claimant had to own the damaged property during the policy period) would be contrary to every fundamental rule of insurance policy construction.

■ "Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates. Any reasonable doubt as to uncertain language will be resolved against the insurer *whether that doubt relates to the peril insured against or other relevant matters.* [Citation.] The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)

Applying the *Remmer* rule as USAU urges would lead to some incongruous results. For example, if Garriott's operations allegedly damaged two adjoining parcels, one owned by the same party throughout the relevant period and one transferred to a new owner, Garriott would be covered under USAU's policy for the claim of one adjoining owner but not the other. We do not see any reason why the existence of coverage *vel non* should turn on fortuitous events or conditions wholly outside the insured's control.

■ There is yet another reason why the *Remmer* rule has no application here. In *Remmer,* the claimants had sued the insureds on a present nuisance theory *and had won that suit before the coverage lawsuit was decided.* Thus both the trial and appellate courts knew, as an absolute, the nature of the damages for which the claimants had sued the insureds (present nuisance), and could decide the coverage obligations based on that certain knowledge.

Here, the underlying suit by the City against Garriott remains unresolved. While the City is suing Garriott on theories of nuisance and trespass, it also has alleged a general negligence cause of action based on *past* conduct by Garriott. Even if no negligence cause of action were pleaded,

however, this court could not assume that the complaint would not in the future be amended to assert such a cause of action.

"[The liability insurer] cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. . . . [C]ourts do not examine only the pleaded word but the potential liability created by the suit." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 276; see also *Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 169 [140 Cal.Rptr. 605].)

For this reason, USAU's reliance on *Kirkham, Michael & Assoc., Inc.* v. *Travelers Indem. Co.* (S.D.S.D. 1973) 361 F.Supp. 189 is misplaced. The *Kirkham* decision seems to rest on language in the underlying complaint rather than on "the potential liability created by the suit." Our case, of course, is governed by California law, and we are obliged to follow the rule announced in *Gray* v. *Zurich, supra.*

For the reasons we have discussed, we conclude that the *Remmer* rule is inapplicable to the issues presented to the respondent court on the motion for summary judgment.

### C. *Statutes of Limitations*

■ USAU argues in the alternative that the City could not be suing Garriott for any damage incurred prior to 1983 due to the statutes of limitations on the City's claims of nuisance, trespass and negligence. Although this argument was raised before respondent court, that court avoided ruling on it in granting summary judgment.

If the applicable statutes of limitations do ultimately preclude the City from recovering for damage suffered during the USAU policy periods, USAU may be able to withdraw from the defense of the City's action and avoid any obligation to indemnify against an ultimate jury verdict. Effectiveness of a statute of limitations is not a certainty, however; equity may prohibit Garriott from effectively raising the statute of limitations defense. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 877-881, pp. 319-323.) Thus this defense is not a certainty but a mere potentiality, and the duty to initially defend Garriott exists regardless of *potentially* meritorious defenses to the City's claims. Only after the trial court in the City's action resolves such defenses in Garriott's favor can USAU step away from its contractually imposed obligation "to defend any suit against the Insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless . . . ." (See *California Union Ins. Co.* v. *Club Aquarius, Inc.* (1980) 113 Cal.App.3d 243, 247 [169

Cal.Rptr. 685]; see also *American Mut. Liability Ins.* v. *Neville Chemical* (W.D.Pa. 1987) 650 F.Supp. 929, 931.)

USAU cites as its primary authority in advancing the statute of limitations argument a federal case, *State of Idaho* v. *Bunker Hill Co.* (D.Idaho 1986) 647 F.Supp. 1064. There the insured, Bunker Hill, was being sued for a continuing nuisance by the state. Codefendant Gulf Resource's insurers were brought into the substantive action as third party defendants. One of the carriers, Continental Re-Insurance, obtained summary judgment on the argument that the statute of limitations barred any claim within its policy period. (647 F.Supp. at p. 1070.)

The critical distinction is that in *Bunker Hill* the district court (which was trying both the substantive and the coverage issues) had previously ruled on the statute of limitations and its application to the substantive issues.

"Since this court has previously held that the State may only recover under its nuisance claim for the time period after December 9, 1979, . . . the Continental policies do not provide coverage for any damages which the plaintiff may recover in this action." (467 F.Supp. at p. 1070.) Application of the statute was thus a certainty.

Similarly, USAU cites *Remmer* v. *Glens Falls Indemnity Co., supra*, 140 Cal.App.2d 84 for the same proposition. Yet in that case the underlying nuisance suit was fully resolved by the time the coverage dispute was decided, and thus the applicability of any possible defenses in the nuisance suit was already conclusively established.

Here, in contrast with both *Remmer* and *Bunker Hill,* the court in the City's action has not ruled on the statute of limitations. Applicability of the defense remains an unknown. USAU may thus not yet rely on the statute as a means of avoiding its coverage duties. Instead, USAU should raise the limitations defense in the substantive action for Garriott's benefit, rather than in the instant action to Garriott's detriment.

### DISPOSITION

The petition for writ of mandate is granted and the respondent court is directed to vacate its order granting summary judgment. Costs to petitioner.

Stone (W. A.), Acting P. J., and Baxter, J., concurred.

A petition for a rehearing was denied July 19, 1990, and the petition of real parties in interest for review by the Supreme Court was denied September 26, 1990.