Doug T. HOANG, Hieu T. Van, Gregory Storbakken, Joan Storbakken, Allan Walts, and Marsha Walts, Plaintiffs–Appellees,

v.

MONTERRA HOMES (POWDERHORN) LLC, a Colorado limited liability corporation, Defendant–Appellee,

and

Assurance Company of America, a New York corporation, and Maryland Casualty Company, a Maryland corporation, Garnishees–Appellants.

No. 02CA2544, 03CA0379.

Colorado Court of Appeals, Div. IV.

Feb. 24, 2005.

As Modified on Denial of Rehearing May 12, 2005.

Certiorari Granted March 20, 2006.

Vanatta Sullan Sandgrund & Sullan, P.C., Scott F. Sullan, Ronald M. Sandgrund, Joseph F. Smith, Greenwood Village, Colorado, for Plaintiffs–Appellee.

Holley Albertson & Polk, P.C., Dennis B. Polk, Golden, Colorado; Lottner Rubin Fishman Brown & Saul, P.C., Patrick J. Casey, Denver, Colorado, for Defendant–Appellee.

Hoffman Reilley Pozner & Williamson LLP, Sean Connelly, Eric Fisher, Denver,

Colorado; Meckler Bulger & Tilson, Bruce Meckler, Christopher E. Kentra, Chicago, Illinois, for Garnishees–Appellants.

Hall & Evans, L.L.C., Chris A. Mattison, Denver, Colorado; Wiley, Rein & Fielding, LLP, Laura A. Foggan, Ian A. Ossakow, Washington, D.C., for Amicus Curiae Complex Insurance Claims Litigation Association.

Bennington Johnson Biermann & Craigmile, LLC, Kenneth R. Bennington, Kathleen E. Craigmile, Denver, Colorado, for Amicus Curiae Homeowners Against Deficient Dwellings (HADD).

KAPELKE *, J.

In this garnishment proceeding, garnishees, Assurance Company of America and Maryland Casualty Company (Insurers), appeal the judgment entered against them in favor of plaintiffs, Doug T. Hoang, Heiu T. Van, Gregory Storbakken, Joan Storbakken, Allan Walts, and Marsha Walts. The garnishment arises in connection with a judgment previously obtained by plaintiffs in this action against defendant, Monterra Homes (Powderhorn), LLC (Monterra), an insured under comprehensive general liability policies issued by Insurers. We affirm in part, reverse in part, and remand for additional proceedings.

Plaintiffs were purchasers of homes built by Monterra. The homes were constructed on a site that contained angled layers of Pierre shale and other soils, which, when exposed to water, expand and exert pressure on surface structures. Each of the homes suffered significant damage relating to the soil problems, and in this action plaintiffs asserted claims against Monterra for negligence, negligent misrepresentation, negligent nondisclosure or concealment, and violation of the Colorado Consumer Protection Act and the disclosure requirements of § 6–6.5–101, C.R.S.2004.

Before the trial of plaintiffs' claims against Monterra was concluded, Insurers filed a declaratory judgment action in federal district court seeking a determination of wheth-

er, and to what extent, the policies covered Monterra for the claims asserted by plaintiffs. Insurers did not serve plaintiffs or Monterra in the declaratory judgment action, however, until after the trial on plaintiffs' claims against Monterra.

In this action, the jury found in favor of plaintiffs and against Monterra on all the claims and awarded substantial damages. Following trial, plaintiffs served writs of garnishment upon Insurers, seeking to garnish Monterra's insurance policies for the full amount of their respective judgments.

In their answers to the garnishment writs, Insurers denied coverage. Plaintiffs thereafter filed a traverse, and the court set the garnishment matter for hearing.

Insurers filed a motion to strike the traverse and vacate the hearing or to stay the proceedings pending resolution of the federal declaratory judgment action or, in the alternative, for leave to engage in discovery. The court did not rule on the motion prior to the hearing.

At the hearing, Insurers argued that they had not been given the opportunity to conduct any discovery and that it would be unfair to require them to try the case without such discovery. The court ruled that it would allow the garnishment hearing to proceed and would determine after hearing the evidence whether discovery would be appropriate.

Plaintiffs presented expert and lay testimony of several witnesses, and the court admitted the transcribed testimony of eight witnesses from the underlying trial. The court expanded the time of hearing from two hours to four, and Insurers' counsel cross-examined all but one of the witnesses.

At the end of the hearing, the court ruled that Insurers would be allowed to conduct limited written discovery, but would not be permitted to take any depositions. The hearing was then continued until October 7, 2002 to allow Insurers to cross-examine plaintiffs' final witness and to present their own case.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2004.

Insurers filed a petition in the supreme court pursuant to C.A.R. 21, asserting that they were being denied due process by the trial court. The supreme court denied the petition without comment.

At the continued hearing on October 1, 2002, Insurers were given approximately two hours to cross-examine plaintiffs' final witness, Monterra's manager, and to present Insurers' own evidence, including the testimony of their two expert witnesses. Also, the parties stipulated to admission of the entire transcript of the trial of plaintiffs' claims against Monterra.

Following legal argument presented at a later hearing, the court ruled that the insurance policies provided coverage for all the damages that had been awarded by the jury against Monterra in the underlying action and entered judgment for plaintiffs on their traverse of Insurers' answers to the writ of garnishment.

## I.

 Insurers contend that the trial court violated their procedural rights by precluding them from conducting adequate discovery and by thus preventing them from litigating the issue of whether Monterra's acts were intentional wrongs and therefore not covered by the policies. We reject the contention.

 A garnishment proceeding is an appropriate context for resolving coverage issues in a third-party insurance case. In such a proceeding, the court must determine whether the damages sustained were the result of a risk or hazard for which the insured had policy coverage. *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1266 (Colo.1998).

 The procedures to be followed in a garnishment proceeding are set forth in C.R.C.P. 103. The judgment creditor attempting to collect on the judgment debt bears the burden of proving the existence and validity of the indebtedness of the garnishee. Accordingly, the garnishee is treated in the same manner as if it had been sued directly on the debt by the judgment debtor and is thus entitled to deny the indebtedness to the judgment debtor, to engage in discovery, and to have a hearing at which the judgment creditor must prove the allegations by a preponderance of the evidence. *Maddalone v. C.D.C., Inc.*, 765 P.2d 1047, 1049 (Colo.App.1988). The parties may offer expert testimony and also may rely on portions of the record in the underlying tort case. *Bohrer v. Church Mut. Ins. Co., supra*, 965 P.2d at 1267; *Butler v. Behaeghe*, 37 Colo. App. 282, 286, 548 P.2d 934, 937 (1976).

Insurers assert that the trial court violated their procedural rights by denying oral discovery, by restricting the subject matter and scope of written discovery, and by allowing them insufficient time to present other fact-dependent issues related to the threshold "occurrence" issue, the "your work" exception, and the "known loss doctrine." We are not persuaded.

 Discovery rulings, including rulings limiting discovery, are within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion occurs only if the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *Keybank v. Mascarenas*, 17 P.3d 209, 214–15 (Colo.App.2000).

 C.R.C.P. 103 does not specify the extent of discovery to be available in a garnishment action. Generally, case management provisions and rules governing discovery do not apply in an expedited proceeding. C.R.C.P. 16(a), 26(a); *Keybank v. Mascarenas, supra*, 17 P.3d at 215. A garnishment proceeding is an expedited proceeding. *Ortiz v. Valdez*, 971 P.2d 1076, 1078 (Colo.App. 1998).

Here, although Insurers were not allowed to take oral depositions, they were permitted to call or cross-examine those witnesses as to whom they had sought discovery. Further, Insurers have not demonstrated how, if at all, additional discovery would have affected the outcome of the garnishment trial. As discussed, Insurers had access to all the testimony and other evidence presented in the underlying trial and were permitted to engage in some written discovery. Accordingly, under the circumstances, we find no abuse of discretion by the trial court warranting reversal.

## II.

Insurers maintain that the trial court improperly prejudged the issue of whether the property damage at issue was caused by an "occurrence" within the meaning of the policies. We perceive no basis for reversal.

At the outset of the hearing, the court stated, "The trial in this case has already happened, and it's not going to happen again." The court further commented that "it was crystal clear" from the evidence in the underlying trial that there was an occurrence and added, "We're not going to litigate whether there was an occurrence."

Despite its early comments, however, the court ultimately placed no restriction on the evidence Insurers could offer and also allowed them to present expert testimony to "contradict or supplement" plaintiffs' expert testimony. The court's findings and conclusions indicate that it considered the evidence and legal arguments on the "occurrence" issue. Under the circumstances, we therefore reject Insurers' contention that the court improperly prejudged the issue or prevented them from presenting evidence.

## III.

Insurers next contend that the trial court applied an incorrect legal standard in determining whether Monterra's conduct that gave rise to plaintiffs' damage award met the policy definition of "occurrence." We disagree.

With certain exceptions, the policies provided coverage for property damage caused by an "occurrence," which is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "occurrence" is to be broadly construed against the insurer. *Colard v. Am. Family Mut. Ins. Co.*, 709 P.2d 11 (Colo.App.1985).

The term "accident" is not defined in the policies and is therefore to be construed in accordance with its plain and ordinary meaning. An "accident" has been defined as an "unanticipated or unusual result flowing from a commonplace cause." *Union Ins. Co.*

*v. Hottenstein*, 83 P.3d 1196, 1201 (Colo.App. 2003).

As noted by the trial court, it is the "knowledge and intent of the insured" that make injuries or damages expected or intended rather than accidental. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1088 (Colo.1991) (noting that recovery will be barred "only if the insured intended the damages").

Here, the trial court found that Monterra may have known, based on the soil reports and other engineering reports, that there was a substantial *risk* that damages would occur, but the evidence did not show that Monterra actually intended or expected the damages. Further, the court noted that Monterra had received building permits and certificates of occupancy from Jefferson County, reasonably leading it to believe that the county had reviewed the soil engineering reports and determined that the homes substantially complied with the building code. The trial court also credited testimony of Monterra's manager to the effect that he did not expect or intend his actions to result in property damage.

Insurers maintain that, by focusing on the result rather than on the knowledge and intent of the insured, the trial court applied an erroneous legal standard in determining that there was an "occurrence" under the policies. A review of the court's order, however, demonstrates that the trial court properly focused its inquiry on Monterra's knowledge, actions, and intentions. We therefore perceive no basis for reversal in this regard.

## IV.

Insurers next contend that the trial court applied an improper definition of the "known loss" doctrine and prevented them from developing facts relating to the doctrine. We reject the contention.

Under the "known loss" doctrine, coverage will not be defeated unless, at the time it entered into the insurance contract, the insured had a legal obligation to pay damages to a third party in connection with a loss. *See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 518 (3d Cir.

1997) (holding that mere knowledge of the loss was insufficient to bar coverage); *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878, 906 (1995) (same).

Insurers argue that the trial court improperly rejected their "known loss" argument on the basis that the policies did not contain any known loss exclusion. Insurers urge that the doctrine is a fundamental principle of insurance law and need not be explicitly stated as a policy exclusion in order to defeat coverage.

In its order, the trial court found that, even if it is assumed that the "known loss" doctrine would apply in the absence of specific policy exclusions, that doctrine would not exclude or limit coverage under the facts of this case. The court found that "Monterra did not have actual knowledge of a covered loss or of any legal obligation to pay damages to a third party in connection with a loss, before the inception date of any of the five policy periods." Because this finding is supported by evidence in the record, we may not disturb it on review.

## V.

■ Insurers next contend that the trial court erred as a matter of law in failing to give effect to the "earth movement" exclusion contained in the policies for the last three of the five years at issue here. We agree.

## A.

■ As an initial matter, we reject plaintiffs' argument that Insurers were barred from relying on the earth movement exclusion because it was improperly appended to the policies.

The Colorado Code of Regulations provides that "[a]ny riders, endorsements, or amendments which limit coverage afforded by an existing policy shall not be effective unless and until the name[d] insured has signified his acceptance thereof by placing his signature on the proposed rider, endorsement, or amendment, one signed and dated copy of which must be attached to the policy." Dep't of Regulatory Agencies Reg. No. 6–1–1(4)(A), 3 Code Colo. Regs. 702–6.

By its terms, Regulation 6–1–1(4)(A) applies to "existing policies," rather than "renewal policies." Section 10–4–601(11), C.R.S. 2004, defines a renewal policy as "a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of the policy beyond its policy period or term."

■ A renewal policy is "just as much a new contract as if issued on a form carrying a different number than the original policy." *Aronoff v. Carraher*, 146 Colo. 223, 227, 361 P.2d 354, 357 (1961). Therefore, a renewal policy is not an existing policy.

Here, the record demonstrates that Insurers issued five policies. Each was for a one-year term expiring on August 7 of that respective policy year. Each was a renewal policy, and therefore endorsements were not subject to the requirements of Regulation 6–1–1(4)(A).

## B.

The earth movement exclusion included in the policies issued for the last three policy years states as follows:

> This insurance does not apply to ... "property damage" ... arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mud flow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

The trial court found that the exclusion was ambiguous when applied to property damage caused by the pressures exerted by underground water associated with Colorado's clay soils or the fill materials underlying plaintiffs' homes. The court held that the exclusion could reasonably be interpreted to apply only to: (1) large-scale or catastrophic earth movement, not to the "miniscule increase in the distance between microscopic clay molecules due to water intrusion" as described by both parties' expert witnesses; (2) movement of naturally occurring "land, earth or mud," as opposed to movement of

the artificial fill placed by Monterra beneath and adjacent to the homes' foundations; or (3) situations other than where water pressure is the proximate and moving cause of the damage to a home. The court also found that the damage here was caused by water pressure associated with clay soils and the fill materials underlying the homes.

 The interpretation of an insurance contract is a matter of law, which we review de novo. *See State Farm Mut. Auto. Ins. Co. v. Stein,* 940 P.2d 384, 387 (Colo. 1997). An insurance policy must be construed in favor of coverage where provisions within the policy are ambiguous or conflicting; however, we should avoid disrupting the parties' settled expectations as expressed or implied in the insurance policy. *Bohrer v. Church Mut. Ins. Co., supra,* 965 P.2d at 1262.

 Whether an insurance policy is ambiguous is a question of law. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984). Where a policy is unambiguous, we must accord its contract terms their plain and ordinary meanings. *Carroll v. CUNA Mut. Ins. Soc'y,* 894 P.2d 746, 749–50 (Colo. 1995).

Here, the trial court had three bases for holding that the exclusion did not apply. First, the court interpreted the exclusion as applying only to large-scale or catastrophic earth movement, and not to the small movements made in the clay molecules. This interpretation is contrary to the plain language of the policies, however, which unambiguously exclude coverage for "any" expansion or other movement of land, earth, or mud.

Second, the trial court determined that the exclusion applies only to the movement of "naturally occurring" land, earth, or mud, as opposed to "artificial fill" placed under the homes. Colorado courts, however, have refused to rewrite policies to create a distinction between natural and artificial causes where no language in the policy supports such a distinction. *See Bartlett v. Cont'l Divide Ins. Co.,* 697 P.2d 412, 413 (Colo.App. 1984), *aff'd,* 730 P.2d 308 (Colo.1986). Here,

the trial court's interpretation is again contrary to the plain language of the policies.

The trial court's third basis for finding the exclusion inapplicable was that the damage here was proximately caused by water pressure. In *Kane v. Royal Insurance Co.,* 768 P.2d 678 (Colo.1989), the supreme court rejected the proximate cause analysis applied by the trial court. In *Kane,* the policy excluded coverage for a loss "caused by, resulting from, contributed to or aggravated by" a flood. *Kane, supra,* 768 P.2d at 685. The language there was similar to the causation language found in the earth movement exclusion here. In rejecting an argument that the exclusion would not apply if the initial damage arose from a non-covered cause combined with a covered cause, the *Kane* court stressed that the broad language in the exclusion specifically excluded loss caused by, resulting from, contributed to, or aggravated by a flood, regardless of the existence of any other contributing cause.

Similarly, here, we reject the trial court's conclusion that the exclusion does not apply because water pressure, associated with the clay soils and fill materials underlying the homes, caused the damage. Even if water pressure caused the soil expansion or movement, the record demonstrates that the expansion or other movement of land, earth, or mud contributed to the damage. Thus, we agree with Insurers that the trial court's reading of the exclusion is contrary to the policy language.

## C.

 Additionally, we reject plaintiffs' argument that there was a conflict between the earth movement exclusion and the so-called subcontractor exception to the exclusion for "your work," thus creating an ambiguity such as that found in *Simon v. Shelter General Insurance Co.,* 842 P.2d 236, 241 (Colo.1992). Application of the earth movement exclusion does not depend on *who* performed the work. Therefore, the subcontractor exclusion is not inconsistent with, and does not undermine or defeat, the earth movement exclusion.

We thus conclude that the trial court erred in holding that the earth movement exclusion

does not apply to defeat coverage for damages incurred in those policy years for which the exclusion was in effect.

## VI.

 Insurers next contend that the trial court erred by "frontloading" the damages to the first two policy periods to minimize any effect of the earth movement exclusion. We disagree.

In *Public Service Co. v. Wallis & Cos.,* 986 P.2d 924, 941 & n.18 (Colo.1999), the supreme court set forth general guidelines regarding allocation of damages across multiple policy periods where such damages are not reasonably divisible and cannot be precisely attributed to successive insurance policies. In such a situation, "the total amount of damages should be divided by the total number of years to yield the amount of damage that is fairly attributable to each year." The court noted, however, that damages are by nature fact-dependent and that trial courts therefore must be given the flexibility to apportion them in a manner appropriate to the case.

Here, the trial court attributed a greater proportion of the indemnity coverage to the earlier policy periods, when the property damage first occurred. In support of its allocation, the court credited the testimony of an expert witness called by plaintiffs who testified that most of the expense of repairing the foundations resulted from the initial damage to the foundation systems, which occurred early on, as opposed to damage of an essentially cosmetic nature that occurred later and was less expensive to repair. Because the trial court's allocation is adequately supported by the record, we conclude that the court did not abuse its discretion.

## VII.

 Insurers next contend that the trial court erred in permitting certain plaintiffs to recover under policies that expired before they owned their homes. We agree.

 As a basic tenet of liability insurance law, a third party must suffer actual damage within the policy period to recover under a liability policy. Thus, property owners do not experience any actual damage from faulty construction until they have purchased the property. *Browder v. United States Fid. & Guar. Co.,* 893 P.2d 132, 133, 134–35 (Colo. 1995) (holding that property owners cannot recover "when damage to [their] property occurred prior to the time they purchased the property").

Here, the Walts did not own their home during the first policy period, and the Storbakkens did not own their property until after the first two policy periods had expired. Further, the record contains no evidence that either the Walts or the Storbakkens received assignments of tort claims from the prior owners.

The trial court held, however, that the parties were subrogated "as a matter of law" to the rights and claims of their predecessors in interest as to the property damage that occurred to the lot and home owned by the prior owners. We are aware of no Colorado authority holding that a subrogation or assignment of claims occurs as a matter of law upon the transfer of title to real property. To the contrary, a division of this court has held that a general warranty deed conveying real property *does not* convey tort or contract claims. *Ford v. Summertree Lane LLC,* 56 P.3d 1206 (Colo.App.2002).

Accordingly, we conclude that Insurers are not liable to the Walts or the Storbakkens for damage to their respective homes that occurred before they acquired ownership.

## VIII.

 Insurers contend that the trial court erred in holding that those attorney fees that were taxed as costs in the underlying action were covered by the policies. We agree.

Here, the policies provided that Insurers would "pay, with respect to any claim or 'suit' we defend … all costs taxed against the insured in the 'suit.' "

Giving the term "costs" its plain meaning, we conclude that it encompasses attorney fees that were awarded as costs.

 Where attorney fees are authorized by statute, court rule, contract, or common

law, they may be treated as either costs or damages. Classification of attorney fees as costs or damages is a fact-sensitive inquiry and generally rests in the sound discretion of the trial court. *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 940–41 (Colo.1993); *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 149–50 (Colo.App. 2003).

Section 6–1–113(2)(b), C.R.S.2004, authorizes a trial court to award "costs of the action together with reasonable attorney fees" to a party who successfully prosecutes an action under the Colorado Consumer Protection Act (CCPA).

Here, in the underlying action, plaintiffs and Monterra filed a stipulated motion for entry of judgment for damages, prejudgment interest, costs, and attorney fees. That motion indicated that an award of attorney fees was appropriate because plaintiffs had prevailed on their CCPA claims.

We agree with Insurers that the policies here cover costs, but *not* attorney fees, and that the only basis for an award of attorney fees in the underlying action was § 6–1–113(2)(b), which permits an award of costs *as well as* attorney fees. That the court characterized the statutorily-authorized fee award as costs does not make Insurers liable for them. Accordingly, we conclude that the court erred in holding that Insurers were liable under the policies for the attorney fees incurred by Monterra.

## IX.

██ Insurers contend that the trial court erred in awarding plaintiffs their attorney fees incurred in prosecuting this garnishment action. We disagree.

██ Under the American rule, a party is not ordinarily permitted to recover its attorney fees as costs or damages unless a statute, rule, or specific contract provision so permits. *Ferrell v. Glenwood Brokers, Ltd., supra*, 848 P.2d at 940–41; *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C., supra*, 97 P.3d at 149–50.

██ C.R.C.P. 103 § 8(b)(5) provides in pertinent part: "At any hearing upon a tra-

verse, the court shall make such orders as to reasonable attorney fees, costs and expense of the parties to such hearing as are just." An award of attorney fees under this rule is at the court's discretion. *United Guar. Residential Ins. Co. v. Dimmick*, 916 P.2d 638, 642 (Colo.App.1996); *United Bank v. Colo. State Treasurer*, 797 P.2d 851, 852–53 (Colo. App.1990).

Relying on *General Accident Fire & Life Assurance Corp. v. Mitchell*, 120 Colo. 531, 538, 211 P.2d 551, 555 (1949) and *Rhodes v. Copic Insurance Co.*, 819 P.2d 1060, 1061–62 (Colo.App.1991), Insurers argue that because they would not have been subject to an award of attorney fees in a declaratory judgment action, they cannot be subject to such an award in this garnishment proceeding.

In our view, however, Insurers misread both *Mitchell* and *Rhodes*. In *Mitchell*, the supreme court stated that "[i]t is a general rule that under no circumstances shall the garnishee, by operation of the proceedings against him, be placed in any worse position than he would be if the defendant sought to enforce a claim against him arising out of the same transaction." *Gen. Accident Fire & Life Assurance Corp. v. Mitchell, supra*, 120 Colo. at 538, 211 P.2d at 555 (citing, inter alia, *Kinzie v. Alexander*, 108 Colo. 534, 120 P.2d 194 (1941)).

Here, so long as Monterra could properly have sued Insurers for the benefits under the policies, plaintiffs could permissibly bring a garnishment action pursuant to their judgment.

In *Rhodes*, a division of this court held that a party to a declaratory judgment action was not entitled to recover attorney fees because no exception to the American rule applied. Here, however, C.R.C.P. 103 § 8(b)(5), creates an exception to the American rule in garnishment actions. Because plaintiffs were pursuing a garnishment action, the trial court was authorized to make an award of attorney fees. Therefore, we perceive no abuse of discretion.

## X.

██ Insurers contend that the trial court erred in concluding that noneconomic damages caused by property damage were covered by the insurance policies. We agree.

The policies provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property, including all resulting loss of use of that property."

The jury in the underlying action awarded plaintiffs approximately $1 million in noneconomic damages for "annoyance, discomfort, inconvenience, aggravation, and loss of the use and enjoyment of the home ... due to any damage sustained by the home."

The policies cover damages caused by physical injury to tangible property. Insurers rely on *Johnson v. Studyvin*, 839 F.Supp. 1490, 1496 (D.Kan.1993), which held that damages attributable to personal annoyance or mental anguish were not recoverable under an insurance policy covering "loss of use" of property. We agree with that court's analysis and conclusion. Liability coverage for property damage does not include noneconomic damages such as those awarded against Monterra in the underlying action.

The judgment is reversed as to the application of the earth movement exclusion, the liability for the Walts' and Storbakkens' damages before they acquired their properties, the award of Monterra's attorney fees incurred in the underlying action, and the liability for noneconomic damages. The judgment is affirmed in all other respects, and the case is remanded for further proceedings in accordance with this opinion.

Judge GRAHAM and Judge RUSSEL concur.