**Doug T. HOANG, Hieu T. Van, Gregory Storbakken, Joan Storbakken, Allan Walts, Marsha Walts; and Monterra Homes (Powderhorn) LLC, a Colorado limited liability corporation, Petitioners**

v.

**ASSURANCE COMPANY OF AMERICA, a New York corporation; and Maryland Casualty Company, a Maryland corporation, Respondents.**

No. 05SC389.

Supreme Court of Colorado,
En Banc.

Jan. 8, 2007.

As Modified March 5, 2007.

Vanatta, Sullan, Sandgrund, Sullan & Smith, P.C., Ronald M. Sandgrund, Scott F. Sullan, Joseph F. Smith, Leslie A. Tuft, Denver, Colorado, Attorneys for Petitioners Doug T. Hoang, Hieu T. Van, Gregory Storbakken, Joan Storbakken, Allan Walts and Marsha Walts.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Golden, Colorado, Lottner Rubin Fishman Brown & Saul, P.C., Patrick J. Casey, Denver, Colorado, Attorneys for Petitioner Monterra Homes (Powderhorn) LLC.

Reilly Pozner & Connelly LLP, Sean Connelly, Eric Fisher, Denver, Colorado, Meckler Bulger & Tilson, Bruce R. Meckler, Christopher E. Kentra, Chicago, Illinois, Attorneys for Respondents Assurance Company of America, a New York corporation, and Maryland Casualty Company, a Maryland corporation.

Benson & Associates, P.C., Jesse Howard Witt, Golden, Colorado, Attorneys for Amicus Curiae Homeowners Against Deficient Dwellings.

McKenzie, Rhody & Hearn, LLC, T. Cass McKenzie, Denver, Colorado, Attorneys for Amicus Curiae Community Associations Institute.

Sears & Swanson, P.C., Victoria Swanson, Colorado Springs, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Hall & Evans, LLC, Chris Mattison, Denver, Colorado, Attorneys for Amicus Curiae Complex Insurance Claims Litigation Association.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Hoang v. Monterra Homes (Powderhorn) LLC and Assurance Co. of America*, 129 P.3d 1028 (Colo.App. 2005).[1] This case deals with a commercial general liability ("CGL") insurance policy. The trial court, through a jury verdict, found Monterra Homes (Powderhorn) LLC ("Monterra") liable for construction defects to the current owners of several homes that Monterra built. Assurance Company of America ("Assurance") insured Monterra during the time period when damage to the homes occurred.

Several of the homeowners, including the Storbakkens, the Hoangs, and the Walts, sought to garnish the insurance policies issued by Assurance for satisfaction of their judgments. One set of homeowners, the Storbakkens, did not purchase their home directly from Monterra, but rather from another couple who owned the home during the relevant policy period. The trial court found that 80 percent of the damage to the Storbakkens' home occurred during this policy period, when their predecessors in interest owned the home, and allowed garnishment of the policy insuring Monterra.

The court of appeals reversed, holding that, because the Storbakkens did not own their home during the policy period, they could not have suffered damage during the policy period. Thus, according to the court of appeals, the Storbakkens could not have the benefit of the insurance proceeds. We disagree.

We hold that the proceeds of the CGL insurance policy at issue in this case are available through garnishment to satisfy the judgment of a subsequent purchaser of the damaged home against the homebuilder because (1) the builder insured itself against

liability for damage occurring during the policy period, (2) the damage to the home occurred during the policy period, (3) no exclusion to the policy rendered the insured's policy coverage inapplicable because of a change in the home's ownership, and (4) the builder of the home was liable for the damage to the home.

Accordingly, in regard to the certiorari issue before us, we reverse the judgment of the court of appeals and remand this case to it with directions to return this case to the trial court for further proceedings consistent with this opinion.

## I.

The plaintiffs in this case are several couples who own homes built by Monterra. Two of the couples, the Hoangs and the Walts, purchased their homes directly from Monterra and one couple, the Storbakkens, purchased their home from a third party, the Kellans.

The Kellans purchased their home from Monterra in November 1995. At this time the Kellans were aware that expansive soils in the area posed a risk, but Monterra assured the Kellans that Monterra had built their home to withstand these conditions. In this area of Colorado, moisture collects under a newly built home and increases the soil volume. This swelling soil creates a harmful condition, exerting pressure on the foundation of the home. Continuous and repeated exposure to this excessive moisture results in cracks in the foundation and further damage to the structure of the home.

The Kellans sold their home to the Storbakkens in March 1998. At that time the damage to the foundation of the home had begun, but neither the Kellans nor the Storbakkens detected it. By the summer of 1999 the Storbakkens complained of visible cracks in the walls and ceilings throughout their home, as well as a separation of the exterior siding from the foundation. Repairs to the Storbakkens' home will cost $444,000.00.

The Storbakkens, along with two other couples owning homes built by Monterra,

---

1. We granted certiorari on the following issue: Whether liability insurance coverage for property damage is voided if the damage occurs when a claimant's predecessor in interest owns the damaged property, despite the insured being found legally liable to pay all the claimant's damages, including damages attributable to such property damage, a view every other state and federal court has rejected.

filed suit against Monterra. The Storbakkens prevailed at trial, where a jury found Monterra liable to the Storbakkens for the full extent of their damages. The trial court found that there had been ongoing and progressive property damage to the lots and homes owned by each of the plaintiffs beginning immediately after Monterra sold the homes. The judgment the trial court entered against Monterra awarded the Storbakkens $777,739.89 including repair costs, attorneys' fees, litigation costs, and interest.

Assurance issued CGL policy no. RGP 26427162, insuring Monterra effective on August 7, 1995. Monterra renewed this policy each year for the four years encompassing the construction and sale of each of the three homes. The annual policies effective during each of these five years were identical, with the exception of an earth movement exclusion appended to the last three policies. The trial court apportioned the majority of the damage to the Storbakkens' home to the first policy year, based on the fact that the foundation of their home was severely compromised during this time, inevitably leading to further damage. The Storbakkens did not own their home during that policy year, giving rise to the dispute now before us.[2]

Following trial, the plaintiff homeowners filed a garnishment action against Assurance, seeking satisfaction of their judgments from the proceeds of Monterra's CGL insurance policy. Assurance denied coverage of the Storbakkens' claim, because the damage to their home occurred when the Kellans owned the home. According to Assurance, coverage for the builder's liability becomes non-operative when the home is sold to another party, even if the damage occurred during the policy period.

At the garnishment proceeding, the trial court held that the plain language of the insurance policy simply requires that the damage for which the insured builder is liable occur during the policy period. The trial court alternatively found that the Storbakkens were subrogated to the Kellans' rights under the insurance policy, as a matter of law.[3]

Reversing the trial court, the court of appeals held that the proceeds of the insurance policy covering the builder's liability are not available to a subsequent purchaser of the home, even though the subsequent purchaser obtained a judgment against the builder for damage that occurred during the policy period. *Hoang*, 129 P.3d at 1037. The court of appeals also held that the Storbakkens were not subrogated to the rights and claims of the Kellans because of a dearth of Colorado authority for the proposition that subrogation of claims occurs as a matter of law upon the transfer of title to real property. *Id.*

## II.

We hold that the proceeds of the CGL insurance policy at issue in this case are available through garnishment to satisfy the judgment of a subsequent purchaser of the damaged home against the homebuilder because (1) the builder insured itself against liability for damage occurring during the policy period, (2) the damage to the home occurred during the policy period, (3) no exclusion to the policy rendered the insured's policy coverage inapplicable because of a change in the home's ownership, and (4) the builder of the home was liable for the damage to the home.

## A.

### Standard of Review

We review the interpretation of an insurance policy de novo. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). We construe an insurance policy according to principles of contract interpretation. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo.2004). In interpreting a contract, we give effect to the intent and reasonable expectations of the parties. *Id.* at 503. We must enforce the plain language of the policy unless it is ambiguous. *Cary*, 108 P.3d at 290. An insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.*

---

**2.** The Storbakkens cannot recover under policies in effect during their home ownership because of the earth movement exclusion.

**3.** In light of our holding in this case, we do not reach the subrogation issue.

When the insurance policy was offered on a take it or leave it basis, rather than being fully negotiated by the parties, we have a heightened responsibility in reviewing its terms. *Thompson*, 84 P.3d at 501–02. In such circumstances, we construe an ambiguity in favor of coverage. *Id.* at 502.

## B.

### Commercial General Liability Insurance

CGL insurance protects businesses from third party claims for personal injury or property damage resulting from accidents. 8 John W. Grund & J. Kent Miller, *Colorado Personal Injury Practice—Torts and Insurance* § 52.2 (2000). An "occurrence policy" confers coverage for injury or damage that occurs during the policy period, regardless of when the claim is presented. *Id.* § 46.6. In contrast, a "claims made" policy confers coverage for claims presented during the policy period. *Id.*

A typical CGL policy broadly defines the damages to which it applies and then specifically lists exclusions to the broad grant of coverage. *Id.* § 46.15. CGL policies often contain an exclusion for damage to property owned by the insured in order to prevent the CGL policy from serving as a property insurance policy. *Cedar Lane Inv. v. St. Paul Fire & Marine Ins. Co.*, 883 P.2d 600, 603 (Colo.App.1994).

An occurrence sufficient to trigger coverage under an occurrence policy need not be sudden, but must be a specific accident or happening within the policy period. Grund & Miller, *supra*, § 47.6. A long term exposure to a harmful condition that results in damage or injury may be an occurrence. *Browder v. U.S. Fid. & Guar. Co.*, 893 P.2d 132, 134 (Colo.1995) (citation omitted). Where property damage is gradual over some period of time, the trial court may make a reasonable estimate of the portion of the damage that is attributable to each year. The trial court may allocate liability to each policy triggered by the damage. *See Pub. Serv. Co. v. Wallis*, 986 P.2d 924, 940 (Colo.1999)(addressing the "time on the risk" method of allocating liability coverage).

A third party who suffers an injury covered by a CGL policy may not have a direct claim under the insurance policy.

*Farmers Ins. Exch. v. Dist. Court*, 862 P.2d 944, 949 (Colo.1993). Rather, the injured party must first obtain a settlement or a judgment against the alleged tortfeasor. *Id.* When the injured party has obtained a settlement or judgment, the injured party may elect to pursue a garnishment proceeding against the defendant's insurer. § 13–54.5–101, *et seq.*, C.R.S. (2006); Grund & Miller, *supra*, § 46.22.

## C.

### The Plain Policy Language Confers Coverage

The Storbakkens obtained a final judgment holding Monterra liable to them for damage to their home. Monterra was insured by an occurrence policy insuring against occurrences during the policy period regardless of when claims are made. The insurance policy in effect during the policy period covering Monterra's liability provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

> This insurance applies to "bodily injury" and "property damage" only if: (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and (2) the "bodily injury" or "property damage" occurs during the policy period.

In the context of the policy, "coverage territory" includes "[t]he United States of America." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy language is unambiguous, conferring coverage for the homebuilder's liability arising out of damage occurring during the policy period. In Colorado, a subsequent homeowner may establish a builder's liability for construction defects, regardless of whether the homeowner purchased the home directly from the builder or from an interim owner. *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 866 (Colo.2005); *Cosmopolitan Homes,*

*Inc. v. Weller*, 663 P.2d 1041, 1045–46 (Colo. 1983).

Nowhere does the policy state that the CGL coverage Monterra purchased terminates when the property is sold to a person who did not own it during the policy period when the damage occurred. The policy contains an exclusion for property owned by the insured, but no exclusion based on the identity or circumstances of the property's ownership by another.

■ An insurance policy must be construed to meet the reasonable expectations of the insured. *See State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167–68 (Colo.1993) (citations omitted). A reasonable insured carefully reading this policy would find no indication that Monterra's insurance coverage against liability on an occurrence basis would terminate when ownership of the property changed after the policy period wherein the damage occurred.

■ Exclusions must be clear and specific to be enforceable. *Surdyka v. DeWitt*, 784 P.2d 819, 820–21 (Colo.App.1989). In absence of an applicable exclusion in the policy, we hold that Monterra's coverage was in effect to cover the Storbakkens' judgment against it.

The court of appeals ruled that our decision in *Browder* controls the outcome of this case. *Hoang*, 129 P.3d at 1037. We disagree. *Browder* differed from this case in two significant respects. First, the insurance policy at issue in *Browder* was a special multi-peril ("SMP") insurance policy, as opposed to the CGL policy at issue in this case. Additionally, *Browder* involved property the insured owned, a circumstance expressly excluded from the policy's coverage.

The SMP policy we interpreted in *Browder* covered damages arising out of the operation of a motel on the property, rather than defects in the construction of that motel. The policy language provided:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence *and arising out of the ownership, maintenance or use of the insured premises and all operations*

*necessary or incidental to the business of the named insured . . . .*

*Browder*, 893 P.2d at 137 (Erickson, J., specially concurring) (emphasis added). This language plainly restricted policy coverage to the operation of the motel on the premises. As Justice Erickson noted in his concurrence, the policy insured against liability arising out of the operation of the motel and did not cover liability arising out of negligent construction of the motel. *Id.*

The SMP policy in *Browder* contained an exclusion for damage to property owned by the insured. *Id.* at 135. The damage at issue there occurred while the insured, Fletcher, owned the motel. Thus, it could not be covered by the policy language. To the extent that further damage to the motel continued after Fletcher sold the property, recovery for this, too, was barred because Fletcher assigned the SMP policy to the new owners simultaneously with their purchase of the property; under the owned-property exclusion, the new owners could not invoke coverage under that policy. *Id.* at 133.

In *Browder*, we distinguished the decisions in *Garriott Crop Dusting Co. v. Superior Court*, 221 Cal.App.3d 783, 270 Cal.Rptr. 678 (1990) and *Trustees of Tufts University v. Commercial Union Insurance Co.*, 415 Mass. 844, 616 N.E.2d 68 (1993). *Browder*, 893 P.2d at 135. But, those cases are applicable to the case now before us. In *Garriott*, the court interpreted a CGL occurrence policy with language very similar to the policy at issue in this case. 270 Cal.Rptr. at 678. Garriott contaminated a neighboring parcel of property beginning in 1969. *Id.* at 679. The plaintiff bought the property in 1985 and discovered the contamination shortly thereafter. *Id.* United States Aviation Underwriters insured Garriott from 1967 to 1970; it argued that the plaintiff could not have the benefit of the policy proceeds because it did not own the property at the time of contamination. *Id.* at 680. But, the court found coverage because, aside from excluding property owned by the insured, the policy did not state to whom the property must belong for coverage to apply. *Id.* at 682.

The court reasoned also that the alternative interpretation would lead to absurd results: if neighboring parcels are damaged

and one changes hands prior to discovery of the damage, the insured will be covered as to one but not the other. *Id.* at 685. This disparity in coverage would result from events entirely outside the insured's control. *Id.* The *Garriott* court concluded that a reasonable insured would not expect this outcome. *Id.*

Likewise, the *Tufts* court held that the insurer could have excluded benefits for parties who did not own the property during the policy period, but chose not to. 616 N.E.2d at 72. The court also reasoned that the policy must be construed in favor of coverage in the face of alternative interpretations. *Id.*

As in *Garriott* and *Tufts,* where the plaintiffs unknowingly purchased damaged property from a party who owned it during the relevant policy periods, the coverage in effect here for Monterra's liability was not terminated because of a change in ownership of the property. *See also Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.,* 126 F.Supp.2d 596 (W.D.N.Y.2001), *aff'd in relevant part, rev'd in part,* 302 F.3d 83 (2d Cir.2002)(holding that an occurrence policy is triggered when the property is first exposed to a hazardous condition; the controlling question is whether the defendant damaged the property during the policy period, not whether the plaintiff owned it at that time).

Our holding in *Browder* is inapplicable to this case. We recognize that some of the language in *Browder* broadens the scope of that opinion beyond what was necessary to decide the case. To the extent that this language implies that coverage afforded by an occurrence-type CGL policy becomes inoperative when the home changes ownership, we overrule it.

## III.

Accordingly, in regard to the certiorari issue before us, we reverse the judgment of the court of appeals and remand this case to it with directions to return this case to the trial court for further proceedings consistent with this opinion.

Justice RICE does not participate.