BAINBRIDGE, INC., n/k/a Birchwood Homes, Inc., a Colorado corporation, Plaintiff–Appellant,

and

David L. Ray and Elizabeth A. Ray, Intervenors–Appellants

v.

TRAVELERS CASUALTY COMPANY OF CONNECTICUT, f/k/a Aetna Casualty Company of Connecticut, a Connecticut corporation, and Travelers Indemnity Company, a Connecticut corporation, Defendants–Appellees.

No. 05CA0361.

Colorado Court of Appeals, Div. VI.

Nov. 2, 2006.

As Modified on Denial of Rehearing Nov. 30, 2006.

Shughart Thomson & Kilroy, P.C., Joseph J. Mellon, Bennett L. Cohen, Megan E. Harry, Denver, Colorado, for Plaintiff–Appellant and Intervenors–Appellants.

Montgomery, Kolodny, Amatuzio, Dusbabek, LLP, Keven F. Amatuzio, John R. Chase, Olivia C. DeBlasio, Denver, Colorado, for Defendants–Appellees.

Opinion by Chief Judge DAVIDSON.

In this action concerning an insurance company's duty to defend, plaintiff, Bainbridge, Inc., and intervenors, Elizabeth Ray and David Ray, appeal from the summary judgment entered in favor of defendants, Travelers Casualty Company and Travelers Indemnity Company (collectively Travelers). We reverse and remand.

## I. Background

Bainbridge is a builder of luxury custom homes. Between March 31, 1995 and March 31, 1998, Bainbridge maintained policies of comprehensive general liability (CGL) insurance and umbrella insurance policies with four insurance companies, including Travelers. The Travelers CGL policies provided Bainbridge with one to two million dollars of coverage.

In 1996, Bainbridge built a house and sold it to the Deals. Shortly after the Deals moved in, evidence of structural damage appeared. Bainbridge investigated and attempted to repair the damage. The Deals then sold the house to the Goshas in 1997. Several months later, evidence of structural damage reappeared. In early 1998, Bainbridge again attempted to repair the damage. Two months later, on March 31, 1998, Bainbridge's policies with Travelers expired. In August 1998, the Goshas sold the house to the Rays for $920,000, the value at which it was appraised. Less than two years later, structural damage again reappeared, but Bainbridge made no further repairs to the house. The cost to repair the damage was estimated at approximately $904,000.

The Rays sued Bainbridge, claiming negligent construction and violation of the Colorado Consumer Protection Act (CCPA). Bainbridge promptly tendered the lawsuit to Travelers and its other CGL insurers. Travelers denied coverage and refused to defend Bainbridge because the tender letter (but not the underlying complaint) indicated that the Rays had purchased the house after Travelers's CGL policy expired. Bainbridge then filed this action against Travelers, alleging violations of the CCPA, breach of insurance contract, and bad faith breach and seeking indemnification.

While the suit against Travelers was pending, after trial, the court entered judgment in favor of the Rays in the Rays' action against Bainbridge. Pursuant to *Northland Insurance Co. v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (1972), Bainbridge assigned to the Rays its claims against Travelers and another insurance company in exchange for the Rays' promise not to execute on the judgment against Bainbridge. The Rays then intervened in the action here.

Travelers moved for summary judgment on the breach of the duty to defend claim, the willful and bad faith breach of the duty to defend claims, and the CCPA claim against it. Travelers (and another insurer that is not a party on appeal) also moved for partial summary judgment on the issue of coverage of the Rays' CCPA claim against Bainbridge. In separate orders, the trial court granted the motions. The court concluded first that there was no coverage for the Rays' CCPA claim. Subsequently, the court concluded that Travelers was entitled to refuse to defend Bainbridge based on information found in the tender letter supplied by Bainbridge in that the Rays could not recover for damages because they did not own the house during the coverage period of Travelers's policies. Later, Travelers moved for and was granted an award of attorney fees for its defense against Bainbridge's CCPA claim.

The dispositive issue on appeal is whether the trial court correctly determined that Travelers did not breach its contractual duty to defend. We conclude that the trial court's ruling was error and that Travelers breached its contractual duty to defend as a matter of law.

## II. Standard of Review

■ Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999). We review a grant of summary judgment de novo. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 298–99 (Colo.2003).

## III. Breach of Duty to Defend

■ An insurer's duty to defend arises when allegations in the underlying complaint, if sustained, would impose a liability potentially or arguably covered by the policy. An insurer looks to the four corners of the complaint, together with the policy, to determine its right and duty to defend. *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556 (Colo.

1996); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo.1991).

■ Generally, the appropriate course of action for an insurer who believes it has no duty to defend is to provide a defense to the insured under a reservation of its rights to seek reimbursement, or to file a declaratory judgment action after the underlying case has been adjudicated. *Hecla Mining Co. v. N.H. Ins. Co., supra*, 811 P.2d at 1089.

Bainbridge and the Rays contend that the trial court erred in determining that Travelers did not breach its duty to defend. Citing the rule established in *Hecla Mining, supra*, they argue that Travelers improperly relied on facts outside the four corners of the Rays' underlying complaint in refusing to defend Bainbridge, specifically the Rays' purchase of the home after the policy had expired. Alternatively, they contend that, even if Travelers properly relied on these extrinsic facts, it nevertheless breached its duty to defend because, under the doctrine of equitable subrogation, the Rays' complaint states a possible claim that could arguably fall within the policy coverage. We do not address the former contention because we agree with the latter.

### A. Equitable Subrogation Generally

■ "Subrogation occurs when one person is substituted in the place of another with reference to a lawful claim, demand or right of the other in relation to the debt or claim and its rights, remedies or securities." *Browder v. U.S. Fid. & Guar. Co.*, 893 P.2d 132, 136 n. 4 (Colo.1995) (quoting *Black's Law Dictionary* 1427 (6th ed.1990) ). Thus, there must first exist a valid claim, right, or debt in order for another to become subrogated to it. *See Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 82 (Colo.App.1986) (explaining derivative nature of subrogation). Subrogation can occur by contract or through application of the principles of equity. *See Ruppel v. Life Investors Ins. Co.*, 969 P.2d 725, 728 (Colo.App.1998).

■ If stated in terms of a debt, one becomes an equitable subrogee by paying the debt of a third party, entitling the payor (subrogee) to collect against the liable third party by stepping into the shoes of its creditor (subrogor). *See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 834 (Colo.2004) ("Subrogation allows a party who discharges another's debt to 'stand in the shoes' of the subrogor [creditor]."). Similarly, if stated in terms of a claim, one becomes an equitable subrogee by paying to a claimant (subrogor) the value of the claim, entitling the subrogee to recover from the liable third party by stepping into the shoes of the claimant. *See Union Ins. Co. v. RCA Corp., supra*, 724 P.2d at 82 ("Subrogation ... gives the [subrogee] the right to prosecute against responsible third parties whatever rights [the subrogor] possesses against them." (quoting 16 G. Couch, *Cyclopedia of Insurance Law* §§ 61:3637 (R. Anderson ed., 2d ed.1983) ) ), *abrogated on other grounds by Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 207 n. 17 (Colo.1992); *Cedar Lane Invs. v. Am. Roofing Supply*, 919 P.2d 879, 884 (Colo.App. 1996) ("[T]he plaintiff is permitted to stand in the shoes of [the party holding the right] and enforce the claim which [that party] had." (quoting 1 D. Dobbs, *Law of Remedies* § 4.3(4), at 606 (2d ed.1993) ) ).

■ Furthermore, because it is an equitable doctrine, no additional actions are needed before equitable subrogation can occur. Thus, unlike in an assignment, a subrogor need not intend to equitably subrogate the claims to a subrogee. *Cf. Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 73 (Colo.App. 1993) (intent required for assignment); *Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206, 1209 (Colo.App.2002) (same). It arises "because it is imposed by courts to prevent unjust enrichment." *Cedar Lane Invs. v. Am. Roofing Supply, supra*, 919 P.2d at 884 (quoting 1 Dobbs, *supra*, § 4.3(4), at 604). It is "a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." *In re Estate of Boyd*, 972 P.2d 1075, 1077 (Colo.App.1998) (quoting *United Sec. Ins. Co. v. Sciarrota*, 885 P.2d 273, 277 (Colo.App. 1994); 16 Couch, *supra*, § 61:18).

### B. Equitable Subrogation and *Browder*

Colorado has long recognized the doctrine of equitable subrogation in the common situation where an insurer pays its insured the value of the insured's claim (thereby discharging the liable third party's debt), and then seeks recovery against the third party. *See, e.g., Mid–Century Ins. Co. v. Travelers Indem. Co.,* 982 P.2d 310, 315 (Colo.1999). However, the parties here disagree whether, conversely, a third party can assert equitable subrogation of the claim or right of a predecessor in title of the insured.

Relying on the pronouncement of the Colorado Supreme Court in *Browder, supra,* 893 P.2d at 134, that it is "the basic tenet of liability insurance that a third party must suffer actual damage within the policy period to recover under a liability policy," Travelers argues that, because the Rays did not suffer actual damage during the policy period, they cannot acquire through equitable subrogation a liability claim of the previous owner who owned the house when Bainbridge was an insured under the Travelers policy. We do not agree.

Although the quoted language from *Browder* is an accurate statement of law, when read in its proper context, it does not address whether a claimant can become subrogated to a third-party successor in title. The statement simply explains what must occur for the initial claim to exist. Likewise, neither *Leprino v. Nationwide Property & Casualty Insurance Co.,* 89 P.3d 487 (Colo.App.2003), nor *Globe Indemnity Co. v. Travelers Indemnity Co.,* 98 P.3d 971 (Colo.App.2004), both relied upon by Travelers, addressed the issue of equitable subrogation.

Furthermore, in *Browder,* the court explained that the property owner could not recover as a subrogated third party because the party from whom the property owner allegedly acquired its claims did not itself have any claim. That is, there was no claim to be subrogated. In reaching this conclusion, the court was necessarily recognizing the possibility of an owner acquiring through equitable subrogation claims of the previous owner. Indeed, in its analysis, the court favorably discussed but distinguished *Garriott Crop Dusting Co. v. Superior Court,* 221 Cal.App.3d 783, 270 Cal.Rptr. 678 (1990), a case that allowed such equitable subrogation, from the facts of *Browder* by explaining: "The claimant in *Garriott* purchased the land from a previous owner, who sustained damage to the property during the policy period. The claimant thus had a possible subrogated right to pursue an action against the insurer." *Browder, supra,* 893 P.2d at 135.

Thus, contrary to Travelers's contention, we read *Browder* as recognizing a possible equitable subrogation claim in a context where, as here, a homeowner did not own the home during the relevant policy period. *See also Vill. Homes, Inc. v. Travelers Cas. & Sur. Co.,* 148 P.3d 293 (Colo.App. 2006) (*cert. granted* October 6, 2006) (plurality opinion, Carparelli, J.) (requiring indemnification even though the plaintiffs did not own the home at the time of the property damage).

We also disagree with Travelers that either *Hoang v. Monterra Homes (Powderhorn) LLC,* 129 P.3d 1028 (Colo.App.2005) (*cert. granted* Mar. 20, 2006), or *Ford v. Summertree Lane Ltd. Liab. Co., supra,* supports its contention that equitable subrogation is not a valid basis for a home purchaser to acquire claims of the previous owner.

In *Hoang,* the division cited the above-quoted language of *Browder* that a third party must suffer damage during the policy period to recover under a liability insurance policy, and then concluded that "property owners do not experience any actual damage from faulty construction until they have purchased the property." *Hoang v. Monterra Homes LLC, supra,* 129 P.3d at 1037. To the extent *Hoang* suggests that this rule precludes equitable subrogation as a viable claim under those circumstances, we conclude that the division mistakenly divorced the *Browder* language from its context. *Browder* only explained what must occur for an initial (presubrogated) claim to exist, but did not suggest that such a claim could not be equitably subrogated to a subsequent purchaser. *See also Vill. Homes, Inc. v. Travelers Cas. & Sur. Co., supra,* 148 P.3d at 303 (plurality opinion rejecting *Hoang* ).

Moreover, whether the analysis in *Hoang* actually related to equitable subrogation is

not clear. In contrast to equitable subrogation, what is commonly termed as conventional subrogation arises, not in equity, but by agreement between the parties. *See Black's Law Dictionary* 1468 (8th ed.2004). In rejecting the trial court's determination that the subsequent purchasers there were "subrogated 'as a matter of law,'" the *Hoang* division, relying on *Ford v. Summertree Lane Ltd. Liab. Co., supra,* 56 P.3d at 1210, merely reaffirmed the proposition that the standard language in a general warranty deed conveying real property, without more, is insufficient to convey—by assignment or by subrogation—a seller's choses in action (personal rights recoverable by a suit at *law)* that are related to the property. As we read *Hoang,* whether principles of equity should or could have been invoked to allow conventional, rather than equitable subrogation, was simply not analyzed or addressed.

Thus, neither *Hoang,* concluding that no assignment or subrogation occurs "as a matter of law" merely by the standard language of title transfer contained in a general warranty deed, nor *Ford,* determining that no intent to assign can be found in traditional language used to convey real property, preclude equitable subrogation, which requires no intention or specific actions by the parties. *Compare Ford v. Summertree Lane Ltd. Liab. Co., supra,* 56 P.3d at 1209 ("[T]o constitute an assignment there must be a purpose to assign the ... chose in action, and the subject matter ... must be described with such particularity as to render it capable of identification." (quoting 6A C.J.S. *Assignments* § 46 (1975))), *with Cedar Lane Invs. v. Am. Roofing Supply, supra,* 919 P.2d at 884 ("[Equitable subrogation] is imposed by courts to prevent unjust enrichment." (quoting 1 Dobbs, *supra,* § 4.3(4), at 604)).

### C. Equitable Subrogation Here

Nevertheless, Travelers argues, the trial court properly granted summary judgment because the allegations in the Rays' underlying complaint and the policy disclosed no possibility of an equitable subrogation claim in this case. We disagree.

■ An insurer is obligated to defend its insured against legal proceedings if the underlying complaint contains allegations that, if sustained, would state a claim that is potentially or arguably within the policy coverage. Hence, the duty to defend is determined by comparing the allegations of the underlying complaint with the terms of the policy. *Hecla Mining Co. v. N.H. Ins. Co., supra,* 811 P.2d at 1089; *Horace Mann Ins. Co. v. Peters,* 948 P.2d 80, 84 (Colo.App.1997). We give insurance policy terms their fair, natural, and reasonable meaning. *Pub. Serv. Co. v. Wallis & Cos.,* 986 P.2d 924, 939 (Colo.1999); *Compass Ins. Co. v. City of Littleton, supra,* 984 P.2d at 613.

Here, the policy provided, in relevant part:

Section I—Coverage

Coverage A. Bodily Injury and Property Damage Liability

1. Insuring Agreement

a. We will pay on behalf of the insured [those sums] the insured becomes legally obligated to pay as damages because of "bodily injury" [or] "property damage" to which this insurance applies. This insurance applies only to:

(1) "Bodily injury" or "property damage":

  (a) Occurring during the policy period; and

  (b) Caused by an "occurrence."

. . . .

Section V—Definitions

. . . .

12. "Property damage" means physical injury to tangible property, including all resulting loss of use of that property.

As discussed, one may become an equitable subrogee by paying to a claimant or potential claimant the value of the claim such that the subrogee steps into the claimant's shoes, entitling the subrogee to seek recovery from the liable third party. And, unlike assignment, equitable subrogation does not require any further actions by the parties or by the subrogor intent to subrogate the claims. *Compare Cedar Lane Invs. v. Am. Roofing Supply, supra,* 919 P.2d at 884–85 (equitable subrogation is equitable doctrine imposed by courts), *and United Sec. Ins. Co. v. Sciarrota,* 885 P.2d at 277–78 (same), *with Ford v. Summertree Lane Ltd. Liab. Co.,*

*supra*, 56 P.3d at 1209 (assignment requires intent).

■ Thus, to set forth an equitable subrogation claim for "property damage" arguably covered by the Travelers policy, the Rays' complaint needed only to support the inferences that (1) the previous owners could have rightfully asserted a claim against Bainbridge that was within the Travelers policy coverage (that is, property damage occurred during their ownership); and (2) the Rays purchased the home from the claim-holders at a price which was not discounted for the damage (that is, they paid the previous owners for the claim or, stated differently, they discharged Travelers' debt).

The Rays' complaint alleged, inter alia:

8. At the time Defendant Bainbridge constructed, sold and repaired the aforesaid property, Defendant Bainbridge knew, or should have known, that the filling wherein the Plaintiffs' property was located was an area containing expansive soils; that the intrusion of water into expansive soils causes such soils to expand, creating movement which imperils the structural integrity of the residence. . . .

. . . .

11. Contrary to the representations authorized to be made by Defendant Bainbridge, the subject property was not built or repaired in a good and workmanlike manner, and was not suited for its reasonably anticipated uses, and the Plaintiffs have learned that their property was constructed on soils designated as having significant swell potential, and without the appropriate structural construction methods, thereby rendering it uninhabitable and/or not fit for its reasonably anticipated uses, or in such a condition that it threatened to become uninhabitable or in violation of applicable codes as a residence.

. . . .

13. Defendant Bainbridge failed to comply with drainage and other plans, and deviated from the standard of care when constructing Plaintiffs' property, causing Plaintiffs' property to experience significant water and run-off infiltration to Plain-

tiffs' property, which has caused damage to Plaintiffs' property.

. . . .

20. Such damage has caused, and continues to cause, actual property damage.

We agree with Bainbridge and the Rays that such allegations set forth a possible claim under the doctrine of equitable subrogation that was potentially within the policy coverage. Specifically, the complaint included allegations by the Rays that damage occurred to their property, that the damage occurred when the house was constructed, and that the damage was ongoing. Moreover, the complaint alleged that the Rays purchased the home without knowledge of the property damage and, therefore, by implication, they did not pay a discounted price.

We disagree with Travelers that there was no claim to acquire by equitable subrogation because the previous owners had not filed a lawsuit against Bainbridge. The allegations in the Rays' complaint indicate that the previous owners had grounds for a lawsuit and, therefore, possessed the right to assert a claim against Bainbridge. *See Browder v. U.S. Fid. & Guar. Co., supra*, 893 P.2d at 136 n. 4 (defining subrogation to apply to claims, demands, and rights).

Travelers also denies that there was a viable claim for the Rays to have acquired by equitable subrogation because, according to Travelers, Bainbridge repaired all the damage that existed during the period of the previous ownership. However, the issue here is whether allegations in the Rays' complaint stated a *possible* claim that was arguably within the policy coverage so as to trigger Travelers's duty to defend, *see Hecla Mining Co. v. N.H. Ins. Co., supra*, 811 P.2d at 1089, and the Rays' complaint included no mention that previous repairs "fixed" all the property damage. To the contrary, the complaint specifically alleged that repairs were negligently and inadequately done.

Thus, because Travelers's assertions regarding remediation of the previous property damage cannot be resolved from the facial allegations of the complaint, Travelers should have disputed these issues at trial in its defense of Bainbridge. Had it been ulti-

mately determined that the property damage was fully repaired, Travelers could have sought reimbursement from Bainbridge for its defense because the Rays would not have had a valid claim against Bainbridge. *See Hecla Mining Co. v. N.H. Ins. Co., supra,* 811 P.2d at 1089 ("The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy.").

Moreover, we do not consider it of consequence, as Travelers suggests, that the Rays did not include the words "equitable subrogation" in the complaint. The complaint contained sufficient allegations to give rise to the possibility of recovery under the doctrine of equitable subrogation. *See Hutchinson v. Hutchinson,* 149 Colo. 38, 40, 367 P.2d 594, 596 (1961) ("If from the allegations of the complaint the plaintiff is entitled to relief under any 'theory,' it is sufficient to state a claim."); *Fire Ins. Exch. v. Bentley,* 953 P.2d 1297, 1302 (Colo.App.1998) (look to essence of a claim regardless of how it is denominated); *Yoder v. Hooper,* 695 P.2d 1182, 1185 (Colo. App.1984) ("Under our rules of civil procedure, the precise legal theory asserted by a claimant is not controlling, so long as the complaint gives sufficient notice of the transaction sued upon."), *aff'd,* 737 P.2d 852 (Colo. 1987).

Furthermore, regardless of any arguable lack of clarity in the complaint, the concept of equitable subrogation, as discussed above, is well established and has been long recognized in the insurance context. *See, e.g., Union Ins. Co. v. RCA Corp., supra,* 724 P.2d at 82. Certainly, the possibility of recovery under that doctrine could not have taken any reasonable insurer by surprise. *See Browder v. United States Fid. & Guar. Co., supra* (recognizing possibility of equitable subrogation claim on facts similar to those here); *Cedar Lane Invs. v. Am. Roofing Supply, supra,* 919 P.2d at 885 (equitable subrogation is not viewed as a separate claim for relief, but rather as one of the various theories of unjust enrichment, and therefore need not be specifically pleaded); *see also*

*Garriott Crop Dusting Co. v. Superior Court, supra* (allowing recovery by subsequent owners); *Standard Fire Ins. Co. v. Spectrum Cmty. Ass'n,* 141 Cal.App.4th 1117, 46 Cal. Rptr.3d 804, 821 (2006) (same) (collecting cases); *In re KF Dairies, Inc. & Affiliates,* 224 F.3d 922, 924 (9th Cir.2000) (property owner need not have owned property during policy period in order to be entitled to coverage under an occurrence-based CGL policy so long as property damage occurred during policy period); *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wash.2d 654, 15 P.3d 115, 129–30 (2000) (same).

Accordingly, we conclude the allegations in the Rays' complaint triggered Travelers's duty to defend, and therefore its refusal to defend Bainbridge constituted a breach of that duty, even assuming that Travelers properly considered the additional and undisputed fact of the Rays' purchase outside the policy period.

## IV. Procedures on Remand

We next address certain issues that may arise on remand.

### A. Remaining Liability Issues

In addition to the breach of the contractual duty to defend claim, Bainbridge's complaint alleged that Travelers's breach was willful and in bad faith. However, because the trial court determined that Travelers did not breach its duty to defend, it necessarily determined that Travelers could not have done so willfully or in bad faith. Thus, by reversing the trial court's summary judgment with respect to Travelers's duty to defend, we necessarily reverse the court's entry of summary judgment on those claims as well.

Similarly, because the trial court's ruling on Bainbridge's CCPA claim was at least in part based on the improper determination of Travelers's duty to defend, we also reverse the entry of summary judgment on that claim. However, we do not preclude on remand Travelers's defense that its improper refusal to defend was as a matter of law a "purely private wrong," arising on unique facts affecting only Bainbridge, and therefore does not give rise to a CCPA claim.

## B. Remaining Indemnification Issues

Because the trial court determined that Travelers did not breach its duty to defend, it did not address Travelers's duty to indemnify Bainbridge for any of the Rays' claims. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* supra, 74 P.3d at 300 ("[W]here no duty to defend exists, it follows that there can be no duty to indemnify."). And, as the case is postured here, it is unclear whether, upon remand, Bainbridge (and possibly the Rays as intervenors) will continue to pursue indemnification claims against Travelers. *See Rusch v. Lincoln–Devore Testing Lab., Inc.,* 698 P.2d 832, 834 (Colo.App.1984) (party may not recover more than once for the same damages); *see also* CJI–Civ. 4th 6:14 (2004) ("If you find for the plaintiff on more than one claim for relief, you may award (him)(her) damages only once for the same (injuries) (damages) (losses)."). However, if they do so, we agree with Travelers that it may dispute these claims regardless of its breach of its duty to defend. *See McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 527 (Colo.App.2004) ("[A] breach of the duty to defend does not preclude an insurer from contesting its duty to indemnify.").

## C. Measure of Damages for Breach of Duty to Defend

Because we have determined Travelers's liability for contractual breach as a matter of law, as guidance on remand, we discuss the appropriate measure of damages.

■ An insurer's duty to defend extends to all claims asserted against its insured if the allegations in the complaint support any one claim that is arguably within the policy. *Fire Ins. Exch. v. Bentley,* supra, 953 P.2d at 1300. Thus, damages for a breach of the duty to defend pertain to all claims for which the insured was wrongfully denied a defense. *See Mgmt. Specialists, Inc. v. Northfield Ins. Co.,* 117 P.3d 32, 36 (Colo.App.2004).

■ General damages for a breach of the duty to defend include those flowing naturally from the breach: the costs and reasonable attorney fees incurred by the insured in defending itself against the claims asserted. *See Giampapa v. Am. Fam. Mut. Ins. Co.,* 64 P.3d 230, 237 n. 3 (Colo.2003); Allan D. Windt, *Insurance Claims & Disputes* § 4:33 (4th ed.2001).

Additionally, the insured may recover consequential damages for the breach which, if based on contract principles, include those damages that arose naturally from the breach and were reasonably foreseeable at the time of contract. *See Vanderbeek v. Vernon Corp.,* 50 P.3d 866, 870–72 (Colo. 2002); *Colonial Ins. Co. v. Am. Hardware Mut. Ins. Co.,* 969 P.2d 796, 801 (Colo.App. 1998) (insured entitled to seek consequential damages for breach of duty to defend); *Wheeler v. Reese,* 835 P.2d 572, 577 (Colo. App.1992) (acknowledging insured's entitlement to consequential damages for breach of duty to defend); Windt, *supra,* § 4:34.

■ If the circumstances are sufficiently egregious to constitute a tort, then the consequential damages include all damages that were proximately caused by the breach, regardless of foreseeability. *See Vanderbeek v. Vernon Corp.,* supra, 50 P.3d at 870–72; Windt, *supra,* § 4:34; *see also Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1042–43 (Colo.1983) (independent tort duty to act without negligence in construction of homes; continuing validity of decision discussed in *A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005)).

Here, although Travelers's liability for breach of its contractual duty has been decided, as discussed above, the remaining tort claims of willful and bad faith breach must be determined on remand. Thus, whether the proper measure of recovery is contract or tort damages—that is, whether, in addition to its costs and attorney fees incurred in defending itself against the Rays' claims, Bainbridge is entitled to recover from Travelers the full or some lesser amount of the underlying judgment, including treble damages and attorney fees awarded to the Rays against Bainbridge—are issues that must be decided in the trial court.

We note that, to the extent that Travelers again relies on *McGowan v. State Farm Fire & Casualty Co.,* supra, 100 P.3d at 527, to argue that Bainbridge cannot expand the policy to recover damages awarded to the

Rays on their CCPA claim, because this is a coverage question, this issue should be addressed by the trial court in the context of indemnification claims, if any, sought by Bainbridge on remand. Bainbridge may, however, otherwise be entitled to such damages if, upon remand, it is determined that Travelers's breach of its duty to defend was tortious and that the tortious conduct proximately caused those damages.

The summary judgment on Bainbridge's claims of breach of duty to defend, willful and bad faith breach, violation of the CCPA, and indemnification is reversed, as is the award of attorney fees to Travelers on Bainbridge's CCPA claim. The case is remanded to the trial court to enter partial summary judgment in favor of Bainbridge on the issue of Travelers's liability for breach of its contractual duty to defend. The trial court is directed to conduct further proceedings, including a jury trial if appropriate, on Bainbridge's claims against Travelers for willful and bad faith breach of the duty to defend, violation of the CCPA, and indemnification, and to determine, consistent with the instructions in this opinion, an award of damages in favor of Bainbridge for Travelers's breach of its duty to defend.

Judge WEBB and Judge J. JONES concur.